IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:13-cv-2349

_____
                                            )
INTERNATIONAL ASSOCIATION OF                )   JURY DEMAND
MACHINISTS AND AEROSPACE                    )
WORKERS, AFL-CIO, DISTRICT LODGE 19,        )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )
                                            )
KANSAS & OKLAHOMA RAILROAD, LLC,            )
WATCO COMPANIES, LLC, and                   )
WATCO TRANSPORTATION SERVICES, LLC,         )
                                            )
                Defendants.                 )
_____)

# COMPLAINT

The International Association of Machinists and Aerospace Workers, AFL-CIO, District Lodge 19 states the following claims against Defendants Kansas & Oklahoma Railroad, LLC, Watco Companies, LLC, and Watco Transportation Services, LLC.

## NATURE OF CLAIM

1.  These claims are brought by International Association of Machinists and Aerospace Workers, AFL-CIO, District Lodge 19 ("IAM" or "Union") on its own behalf and on behalf of IAM-represented employees at Defendant Kansas & Oklahoma Railroad ("K&O Railroad"), which is wholly-owned and controlled subsidiary of Defendant Watco Companies, LLC ("Watco"), through Defendant Watco Transportation Services,

LLC ("WTS") (collectively "Defendants").  Defendants have engaged in a concerted campaign to punish employees for exercising their legal right under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, to elect union representation by the IAM, and in so doing to deter other employees from unionizing.

2. Carmen employed by K&O Railroad elected the IAM to be their representative in February 2013.  Since that time, Defendants have engaged in a pattern of harassment designed to drive off Carmen employees who voted for the Union.  As part of this anti-union strategy, in March of this year Defendants unlawfully denied the Carmen their profit-sharing bonuses for 2012 asserting that as union-represented employees they were no longer eligible for the bonuses.  These actions are clearly violative of Section 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth. *See Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218 (D.C. Cir. 2000).  In addition, Defendants' harassment and discrimination against union members constitutes a failure to bargain in good faith with the Union in violation of Section 2, First of the RLA, 45 U.S.C. § 152, First.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of these claims pursuant to the RLA, 45 U.S.C. § 152, First, Third and Fourth and 28 U.S.C. §§ 1331, 1332, 1337, and 2201.  Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff is headquartered in the district and because the Defendant corporations do business in the State of Colorado.

## PARTIES

4. The IAM is an unincorporated labor organization representing employees throughout the United States and Canada, including the Carmen and Locomotive Maintenance Employees employed by Defendant K&O Railroad. Pursuant to the RLA, the International Union is the certified collective bargaining representative of the K&O Carmen and Locomotive Maintenance Employees. The IAM carries out that representational function through Plaintiff District Lodge 19, which is an intermediate level body within the IAM. District Lodge 19 is headquartered in Denver, Colorado. The District Lodge brings these claims on its own behalf and on behalf of its members.

5. Defendant K&O Railroad, is a short-line railroad operating in Kansas, Oklahoma, and Colorado. It is a wholly-owned and controlled subsidiary of Defendant Watco Transportation Services, which is controlled by its parent company, Watco Companies. It is one of Watco's most profitable subsidiaries. K&O Railroad is registered to do business and does business in the State of Colorado. Its registered agent is located in Denver, Colorado. It is headquartered in Pittsburg, Kansas.

6. Defendant Watco Companies is a privately-held company incorporated in Delaware and based in Pittsburg, Kansas. Watco is a family-run company and its Chief Executive Officer is Richard B. Webb. Watco, through its wholly-owned subsidiary Watco Transportation Services, currently owns 30 domestic short-line railroads, including K&O Railroad, operates in 21 states, and has over 2,500 employees. Watco also operates eight locomotive repair shops and 16 railcar shops, and supplies a variety of terminal and port services.

7. Defendant Watco Transportation Services is a wholly-owned subsidiary of Watco. WTS is headquartered in Pittsburg, Kansas, and wholly owns and controls K&O Railroad. Upon information and belief, Richard B. Webb is the beneficial principal shareholder of both K&O Railroad and WTS.

**FACTS**

8. Defendant Watco sets employment practices and policies for its subsidiary railroads, including the K&O Railroad. Watco has promulgated an employee handbook which is applicable to the employees of its subsidiary railroads, who are referred to as Watco "Team Members." When employees of a Watco-owned railroad are unionized, CEO Richard B. Webb or other Watco officers are primarily responsible for labor relations functions, including the negotiation of collective bargaining agreements.

9. On December 12, 2012, the IAM filed an Application for Investigation of a Representation Dispute with the National Mediation Board ("NMB" or "Board") seeking to represent the previously unrepresented craft or class of Carmen Employees at K&O Railroad. The IAM's application was accompanied by the requisite authorization cards of Carmen who had expressed interest in IAM representation.

10. The NMB is an independent federal agency with exclusive authority to determine the collective bargaining representative of railroad employees by election or otherwise. 45 U.S.C. § 152, Ninth.

11. The Board found that the IAM had demonstrated a sufficient showing of interest in support of its Application and ordered an election among the Carmen at K&O Railroad to determine whether they desired to be represented by the IAM. Voting in the

representation election commenced on January 26, 2013 and concluded on February 12, 2013.

12. On January 25, 2013, the IAM also filed an Application for Investigation of a Representation Dispute with the NMB seeking to represent the previously unrepresented craft or class of Locomotive Maintenance Employees employed by K&O Railroad. The Application was supported by the requisite authorization cards of Locomotive Maintenance Employees who had expressed interest in IAM representation. Following the resolution of a dispute between the company and the IAM over the eligibility of certain employees to vote in the election, the Board ordered an election for the craft or class of Locomotive Maintenance Employees with voting to begin on April 25, 2013 and conclude on May 16, 2013.

13. During the entire representation dispute process before the NMB, Defendant Watco was heavily involved in opposing the organizing drive. In fact, Watco's Associate General Counsel, Michael Gray, appeared in the matter on behalf of the K&O Railroad and all communications with the Board were sent through Watco.

14. On February 12, 2013, the tally occurred in the Carmen election. By a vote of 5-0, the Carmen employed by K&O Railroad elected the IAM to be their collective bargaining representative under the RLA.

15. On February 13, 2013, the NMB certified the IAM as the collective bargaining representative for the craft or class of Carmen employed by K&O Railroad.

16. On February 14, 2013, just one day after the Carmen obtained union representation and without any prior notice, K&O Railroad management announced that

the start time for Carmen was changed from 6:00 a.m. to 6:30 a.m.  No reason was given for the change at the time.  It is clear from the timing of the change and the lack of any legitimate business justification that the change was an act of retaliation against the newly-unionized Carmen and was intended to limit the contact between the Carmen and the Locomotive Maintenance Employees, who were in the process of a union election.

17. On February 21, 2013, the President and Directing General Chairman of IAM District Lodge 19, Jeff Doerr, wrote a letter to K&O Railroad General Manager, Brad Hayes, asserting that the start time change constituted unlawful retaliation against the Carmen for their decision to unionize in violation of the RLA.  In early March, K&O Railroad repealed the start time change for its Carmen employees.

18. Before the new policy was revoked, however, one Carmen was forced to resign as a result of the start-time change since he was no longer able to hold down his second job under the new schedule.  During the Spring of 2013, another Carmen also resigned his employment.  Rather than hiring to fill these positions, the K&O Railroad has instead engaged temporary workers as Carmen.

19. Watco maintains a profit-sharing bonus plan for Watco "Team Members," including employees of K&O Railroad.  The profit-sharing plan is known as the Economic Value Added ("EVA") Bonus Plan.  EVA is a measurement of value creation for the entire Watco organization.  When EVA improves in a given year, Watco Team Members are rewarded with annual bonus payments.

20. In order to be eligible for the EVA Bonus Plan, a Team Member must be employed at the time of the disbursement and must have been hired prior to October 1 of

the year for which the bonus is awarded. For those hired during the year but prior to October 1, the bonus amount is pro-rated and banked for disbursement in the following year. In addition, each Watco facility with eligible Team Members is required to satisfy certain safety criteria in order for the employees of that facility to be entitled to the payment of the full bonus amount.

21. In the past, employees of K&O Railroad have consistently received bonus payments under the EVA Bonus Plan. Carmen employees have received bonus payments each year for at least the last six years. Carmen, whose average gross salary is approximately $45,000 per year, have come to rely upon the bonus as a significant portion of their annual compensation.

22. On March 15, 2013, the K&O Railroad paid out profit-sharing bonuses to employees under Watco's EVA Bonus Plan. All Watco Team Members at K&O Railroad received a bonus in the amount of $1,528, except for the Carmen who had voted to be represented by the IAM.

23. Carmen employed by K&O Railroad at the time of the bonus distribution were employed during the previous year and were eligible to receive an EVA Bonus under the terms of the profit-sharing plan. Nonetheless, the bonus payment was withheld from them. These Carmen employees were not paid a bonus because they chose to exercise their legal right under the RLA to be represented by a union and to punish them for voting for the IAM.

24. IAM-represented Carmen also had their bonuses withheld in order to deter the Locomotive Maintenance Employees, who were then subject to an IAM organizing drive, from exercising their legal right to be represented by a union.

25. On March 19, 2013, two Carmen employees, Marcus Curran and Colby Jordan, were told to report to the office of K&O Railroad's General Manager, Brad Hayes. During this meeting, Messrs. Curran and Colby asked Mr. Hayes why all K&O Railroad employees had received bonus payments on March 15 except for the recently unionized Carmen. Mr. Hayes responded that bonus payments for the Carmen would now have to be negotiated as part of a collective bargaining agreement in order for Carmen employees to receive the annual bonus.

26. On May 16, 2013, the NMB conducted the tally in the Locomotive Maintenance Employees election. By a vote of 6-0, the craft or class of Locomotive Maintenance Employees at K&O Railroad elected the IAM to be their collective bargaining representative under the RLA.

27. On May 17, 2013, the NMB certified the IAM as the collective bargaining representative for the craft or class of Locomotive Maintenance Employees employed by K&O Railroad.

28. Collective bargaining negotiations commenced in June of this year, but thus far no progress has been made. Neither the Carmen nor Locomotive Maintenance Employees have consummated a collective bargaining agreement with the Defendants.

29. IAM has been instructed by the K&O Railroad to deal directly with Watco officials regarding labor-management issues, instead of working with local K&O

Railroad management. To date, all communications regarding collective bargaining negotiations for K&O Railroad employees have occurred through Watco's CEO, Richard B. Webb, and Watco's Associate General Counsel, Michael Gray.

30. On June 19, 2013, IAM General Chairman Michael McCathy spoke to Mr. Gray and registered the Union's strong objection to the denial of bonus payments to the recently unionized Carmen. On July 5, 2013, General Chairman McCarthy sent an email to Mr. Gray reiterating the IAM's objection and asserting that the company's conduct constituted a violation of Section 2, Third and Fourth of the RLA. Mr. Gray responded by letter on July 30, 2013, denying that the company had violated the law.

31. As a result of the reduction in the Carmen workforce from 5 employees to 3 employees during the Spring of 2013, Carmen Colby Jordan, who is assigned to K&O Railroad's Hutchinson, Kansas location, was required to travel to the carrier's Witchita, Kansas location over 50 miles away to perform work. Initially, Mr. Jordan travelled to Witchita as part of his work duties and consequently was paid for the travel time which is over an hour.

32. Mr. Jordan has been a consistent IAM supporter and on August 16, 2013 he was elected to represent his co-workers as a Local Chairman. Subsequent to his election, K&O Railroad informed Mr. Jordan that effective September 3, 2013 he would be assigned to the Witchita location as his home terminal. As a result of this reassignment, he will no longer travel to Witchita during working hours and will no longer be compensated for the travel time. Mr. Jordan believes that he may be forced to resign as a result of the increased burden and financial cost of commuting to Witchita.

33. Defendants' conduct is intended to drive away employees who voted for unionization with the ultimate aim of eliminating the Union as a representative. Upon information and belief, Watco has employed this same anti-union strategy of eliminating union supporters at other railroads owned by it when workers have unionized.

34. IAM currently has an organizing campaign underway among the approximately 40 operating craft employees at K&O Railroad and intends to file an application for a representation election with the NMB. Defendants' conduct is also intended to thwart these organizing efforts.

### COUNT 1:  VIOLATION OF SECTION 2, THIRD AND FOURTH OF THE RLA, 45 U.S.C. § 152, THIRD AND FOURTH

35. IAM hereby incorporates by reference the allegations contained in paragraphs 1-34 of this Complaint.

36. Section 2, Third of the RLA, 45 U.S.C. § 152, Third, governs the designation of employee representatives at RLA-covered rail carriers and provides as follows:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

37. Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, governs employees' rights to organize and prohibits carriers from interfering with that right. It provides that:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees ….

38. By refusing to pay the profit-sharing bonus to the Carmen employees, the only unionized employees on the property at the time, Defendants have unlawfully taken reprisal against them and have interfered with their right to organize and bargain collectively through a representative of the employees' choosing in violation of Section 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth.  In addition, Defendants actions are intended to have a chilling effect on other K&O Railroad employees who desire to exercise their legal right to choose union representation.

39. Further, Defendants' efforts to eliminate the current Carmen workforce constitute interference with those employees' right to unionize and is intended to deter other K&O Railroad employees from seeking representation in violation of RLA Section 2, Third and Fourth.

### COUNT 2:  VIOLATION OF SECTION 2, FIRST OF THE RLA, 45 U.S.C. § 152, FIRST

40. IAM hereby incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint.

41. Section 2, First of the RLA, 45 U.S.C. § 152, First, sets forth the general obligation of carriers to settle disputes with employees:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

The Supreme Court has described this Section as "[t]he heart of the Railway Labor Act." *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377 (1969). Section 2, First also includes the duty to bargain in good faith. *See Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 574-75 (1971).

42. Defendants' conduct to undermine the Union is violative of RLA Section 2, First because it evidences an intent not to settle disputes and reach agreements with the IAM.

### COUNT 3: DECLARATORY JUDGMENT, 28 U.S.C. § 2201

43. IAM hereby incorporates by reference the allegations contained in paragraphs 1-42 of this Complaint.

44. Pursuant to 28 U.S.C. § 2201, the Court should issue a declaratory judgment that Defendants' conduct, including the refusal to make bonus payments to otherwise eligible Watco Team Members based upon their union representation status, constitutes a violation of Section 2, Third and Fourth of the RLA.

45. Further, the Court should issue a declaratory judgment that Defendants' conduct constitutes a refusal to settle disputes and reach agreements with the IAM in violation of RLA Section 2, First.

- 13 -

## PRAYER FOR RELIEF

WHEREFORE, IAM respectfully requests that this Court enter the following relief:

(1) An Order directing Defendants to cease and desist from their violations of Section 2, First and Section 2, Third and Fourth of the RLA, and enjoining Defendants from further violations of the RLA;

(2) An Order directing Defendants to pay all bonus amounts improperly withheld from K&O Railroad Carmen with applicable prejudgment interest;

(3) An Order declaring that Defendants' conduct, including the refusal to make bonus payments to otherwise eligible Watco Team Members based upon their union representation status, violates Section 2, First and Section 2, Third and Fourth of the RLA; and

(4) Such other and further relief including damages, attorneys' fees and costs that the Court may deem just and proper.

Dated:  August 30, 2013

Respectfully submitted,

*/s/ Carmen R. Parcelli*

JOSEPH GUERRIERI, JR.
CARMEN R. PARCELLI
ELIZABETH A. ROMA
Guerrieri, Clayman, Bartos & Parcelli, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Telephone: (202) 624-7400
Fax:  (202) 624-7420
Email:   jguerrieri@geclaw.com
Email:  cparcelli@geclaw.com
Email:  eroma@geclaw.com

Counsel for International Association of
Machinists and Aerospace Workers, AFL-CIO,
District Lodge 19